[No. 28590.  *En Banc*.  June 11, 1942.]

KONSTANTINE POPOFF *et al., Respondents*, v. ANNA MOTT, *Appellant.*[1]

[1]Reported in 126 P. (2d) 597.

2

*Robertson & Smith,* for appellant.

*Edge, Keith & dePender* and *Leo N. Cashatt,* for respondents.

MAIN, J.—The plaintiffs brought this action to recover damages for personal injuries, and also for property damage. The trial was to the court and a jury, and resulted in a verdict in favor of the plaintiff Konstantine Popoff in the sum of thirty-six hundred dollars for personal injuries, six hundred and fifty dollars, special damages, and seventy-five dollars, property damage. A separate verdict was returned in favor of the plaintiff Emily D. Popoff in the sum of twenty-five dollars. The defendant moved for a judgment notwithstanding the verdicts, and also for a new trial, both of which motions were overruled, and from the judgment entered upon the verdicts, she appeals.

The facts which the jury had a right to find, under the evidence offered, may be stated as follows: The

accident which gave rise to this action happened on the 3rd day of April, 1940, at about the hour of two o'clock in the afternoon, near the intersection of Division street and Dalke avenue, in the city of Spokane. Division street is a paved street, extending north and south, and has four traffic lanes, two to carry the northbound traffic, and, likewise, two to carry the southbound. Dalke avenue extends east and west, and had been graded, but not paved.

The respondents are husband and wife, and reside on a small ranch at or near Slocan City, British Columbia. Some days before the accident happened, they had come to Spokane in their half-ton Chevrolet truck for the purpose of purchasing certain merchandise to be used upon the ranch. The body of the truck back of the cab was approximately eight feet long. After spending a few days in the city of Spokane, and on April 3, 1940, they started to return to their home, Mrs. Popoff driving the truck. They proceeded north on Division street, traveling in the outside lane for northbound traffic. For a half a block or such a matter, as they approached Dalke avenue, there were paper boxes and cartons strewn along upon the lane upon which they were traveling, some of the cartons being of considerable size. To pass by these cartons, Mrs. Popoff swung the truck to the left, and, after passing the last one, returned to the outside lane upon which they had been proceeding before reaching the paper boxes and cartons.

A Plymouth automobile, driven by Mrs. Mott, which had been proceeding north on the same lane of traffic, some distance behind the Chevrolet truck, struck the truck on the back end, and pushed it along the pavement something like forty feet when it overturned, and, just before overturning, the Plymouth automobile struck the side of the truck just behind the cab. The

truck fell on its left side, and Mr. and Mrs. Popoff were extricated therefrom through the right-hand door. Mrs. Popoff was slightly injured. Mr. Popoff was in a dazed condition, but not unconscious. They returned to the city and remained a few days, while the truck was being repaired. While in the city, they had consulted a doctor, whose testimony as to the condition of Mr. Popoff will be hereinafter more specifically referred to.

After returning to their ranch, a doctor was called to see Mr. Popoff, and he prescribed certain medicines for him, but did not at that time think that his condition was serious, but thought that he would soon be all right. His condition did not improve, and sometime later he consulted another doctor, who suggested to him that he go to a hospital and have an X ray taken. This was done. The doctor taking the X ray was a witness upon the trial, and, likewise, his testimony will be referred to more in detail later herein.

The trial occurred a little more than a year after the date of the accident, and in the interim Mr. Popoff, who was fifty-eight years of age at the time of the accident, had not been able to do the work upon the ranch which he had done prior to the accident, and within that time had lost in weight something like thirty pounds. At the time of the accident and prior thereto, as the evidence shows, he was a strong, husky man, capable of doing, and was doing, all kinds of work upon the ranch. Subsequent to the accident, he had only been able to do very little work.

The testimony is in dispute as to the manner in which Mrs. Popoff swung back into the outside lane of traffic. The evidence offered by Mr. and Mrs. Popoff was to the effect that she came back into that lane gradually. The testimony of Mrs. Mott is that she made a sudden and abrupt turn. A witness who was standing nearby

as these cars approached and crossed the intersection testified that the truck was proceeding at about twenty-five miles an hour, and that the Plymouth was going at a speed of from thirty-five to forty miles an hour.

The first question to be considered is whether Mrs. Mott was guilty of negligence. The contention is made in her brief, though not persuasively argued, that she was not guilty of negligence. The jury had a right to find that the Plymouth automobile was exceeding the speed limit and was attempting to pass the truck on the right-hand side without having given any warning signal. The question of Mrs. Mott's negligence was for the jury.

The principal contention of Mrs. Mott was that Mrs. Popoff was guilty of contributory negligence in returning to the outside lane without giving any warning sign, as required by the statute (Rem. Rev. Stat., § 6360 [P. C. § 198a] *et seq.*) and an ordinance of the city of Spokane.

The witness, above referred to as being near the scene of the accident, testified that the truck was in the center of the outside lane when the Plymouth came up behind and hit it in the rear. His testimony was, in part, as follows:

"As I was approaching Division about 25 or 30 feet on the east side of Division Street, I seen the truck passing there and just down the street I seen several boxes or paper cartons lying in the two east lanes, the outside lane and the inside lane, and this truck was passing on the left side of the paper boxes in the inside lane, and then she was coming back to the outside lane, going north, and was in the center of the outside lane when this car came up behind her and hit her in the rear end of the truck, pushed the truck on ahead about thirty-five feet and they swung over on the east side of Division and tipped over. It was tipped over about 41 feet from the north line of Dalke Avenue. After it was tipped over, the front of the truck was

headed southeast. . . . Q. Well, how did it come back on the east lane, with a quick turn or was it gradual? A. A regular turn. The collision occurred on the north side of Dalke and the east line on Division."

This witness further testified, on cross-examination, that the truck was "on the outside lane for quite a distance before the collision occurred."

In view of this testimony, which the jury had a right to believe, it would appear to be immaterial whether Mrs. Popoff gave any warning sign that she was going to return to the outside lane of traffic. It has frequently been held by this court that, before a case can be taken from the jury on the ground of contributory negligence, as a matter of law,

" . . . the acts of the plaintiff, or of the plaintiff's decedent, must have been so palpably negligent that there can be no two opinions concerning them." *Richardson v. Pacific Power & Light Co.*, 11 Wn. (2d) 288, 118 P. (2d) 985, citing a number of previous decisions of this court.

We see nothing in the evidence which would justify the conclusion that the physical facts overcame the testimony, above referred to. The court properly overruled the motion for judgment notwithstanding the verdicts.

There is the further contention that the verdict of thirty-six hundred dollars, for personal injuries sustained by Mr. Popoff, was excessive. We shall now refer to some of the testimony of the doctors who examined him after the injury, one of whom had again examined him a few days before the trial.

Dr. W. E. Newman, a practicing physician and surgeon in the city of Spokane, examined Mr. Popoff shortly after the accident, and his testimony was, in part, as follows:

"I saw Mr. Popoff on April 10th, 1940 for the first time. I found inability to flex his left arm to the maximum. He complained of pain in both arms from the elbow to the shoulder. I found that he had a definite numbness. His right arm showed a sensory paralysis extending from the middle of the second finger up the side of the arm all the way up. That indicates to me that there must have been some damage to the nervous system controlling that particular part of the arm. The nerves that lead to this place connect with the spinal cord about the sixth, seventh and eighth cervical vertebrae. That portion of his anatomy on the right side of the neck was very tender to touch, on both sides, but more so on the right side. This man was of stocky build, very powerfully built, with strong muscles in the shoulders, arms and back, and he weighed about 185 pounds. He looked to be in excellent health except for these things which I found."

This witness's testimony as to the condition just before the trial will be referred to a little later.

Dr. W. A. Coughlin, a physician and surgeon practicing at Trail, British Columbia, was the one who took the X rays above mentioned, and upon the trial, after referring to the X rays, he, in part, said:

"Exhibit 4-D is my report on the X-rays. Exhibit 4-E shows some pathology on the first rib. Pathology is something wrong. We found two or three spiculas of bone here. A spicula is a small piece of bone, and we found that just about where the joint is. This is a very common occurrence when an injury takes place in that part and the ligaments fail, you have a little piece of bone when they are put on tension or strength."

Dr. Newman who, as above indicated, examined Mr. Popoff a few days before the trial, testified as to his condition at that time, in part, as follows:

"He went home and I did not see him until he came here this week. When I examined him this time I noticed his marked loss of weight. His face was drawn and he looked tired and worn out. He had strong

muscles all over when I first examined him and this time his muscles had shrunken. His abdomen appeared much smaller than it did before. He was more irritable."

The doctor further testified that the condition of Mr. Popoff was due to his injury, and that he did not think he was going to get better.

Dr. William L. Spencer, a physician and surgeon practicing in the city of Spokane, examined Mr. Popoff for the first time a few days before the trial, and he expressed the opinion that Mr. Popoff had suffered a laceration of the spinal cord, with a probable small hemorrhage into that cord, and that his condition was going to become gradually worse.

In addition to this medical testimony, certain witnesses who resided near Mr. and Mrs. Popoff in British Columbia testified to his loss of weight and inability to work after the accident, and also that, prior to the accident, he was a strong, husky man, capable of doing all kinds of hard work upon the ranch.

In view of all of this testimony, we are of the view that there is no substantial basis for the claim that the verdict was excessive, and that the jury, in fixing the sum at thirty-six hundred dollars, acted well within its province.

We now come to the last contention, which is, that counsel for Mr. and Mrs. Popoff, in examining certain of the jurors on their *voir dire,* brought into the case the matter of indemnity insurance. One of the jurors, after stating that he was employed as an accountant with the Washington Water Power Company, was asked whether he had anything to do with "casualty insurance in that connection," and he answered that he did not. Another juror, after stating that he was employed by a certain bank in the city of Spokane, was asked whether the bank had an "in-

surance department," and he answered that the bank did not, but that there was a separate company that did, with which company he did not have anything to do. Another juror, when being interrogated, answered:

"I live at Greenacres. My occupation is farmer and insurance salesman. I sell insurance for the North-west Casualty Company,"

as well as other kinds of insurance. He was further asked whether the attorney for the defendant in the case was attorney for "your company." At this time, the attorney for Mr. and Mrs. Popoff asked the court for permission to approach the bench, in company with opposing counsel. This was done. A long colloquy took place between the court and respective counsel, which was not within the hearing of the jury, and resulted in the court excusing the juror, along with one or two others who had been passed, for cause. The reason for asking permission to approach the bench was that the attorney for Mr. and Mrs. Popoff had certain information which led him to believe that this last juror was employed by the insurance company with which Mrs. Mott had a policy. At this time, the attorney for Mr. and Mrs. Popoff had exhausted all of his peremptory challenges, and he thought that this juror should not sit to hear the case, and that he did not want to pursue the matter of insurance further for the purpose of making it the basis for a challenge for cause. We think what was said in the colloquy between the court and respective counsel is not material. The questions asked of the respective jurors, above referred to, were not improper.

In the case of *Armstrong v. Yakima Hotel Co.,* 75 Wash. 477, 135 Pac. 233, in the examination of the jurors on their *voir dire* in that case, counsel for the plaintiff was permitted, over objection, to ask several of the jurors whether they were connected with any

insurance or "indemnity" company, and whether they carried accident insurance. One of them, an insurance agent, was asked if he handled indemnity insurance. With reference to these questions, the court, after pointing out, in effect, that, if insurance was brought into the trial deliberately, it constituted misconduct necessitating a new trial, said:

"In this case, we discover no such misconduct. We find nothing reasonably calculated to advise the jury that the appellant was protected by liability insurance, further than the questions noted. The record bears no tangible evidence of a sinister motive. Similar questions to those here permitted were held proper in *Hoyt v. Independent Asphalt Paving Co.*, 52 Wash. 672, 101 Pac. 367, as being reasonably necessary to enable counsel intelligently to exercise his peremptory challenges."

In the case of *Gephart v. Stout*, 11 Wn. (2d) 184, 118 P. (2d) 801, it was held that a mistrial should not be granted unless it appeared that counsel for the plaintiff or the witness deliberately, wilfully, or collusively had undertaken to inform the jury that the defendant was in some way protected by insurance. It was there said:

"A mistrial should not have been granted unless it appeared that counsel for respondent [plaintiff] or the witness deliberately, wilfully, or collusively had undertaken to inform the jury that the appellant was in some way protected by insurance. *Jensen v. Schlenz*, 89 Wash. 268, 154 Pac. 159; *Lucchesi v. Reynolds*, 125 Wash. 352, 216 Pac. 12; *Demase v. Nemitz*, 144 Wash. 404, 258 Pac. 25; *Nicholson v. Brado*, 162 Wash. 146, 297 Pac. 1093.

"As Judge Chadwick stated in *Jensen v. Schlenz, supra*:

" 'The gravamen of the offense is not in the disclosure of a collateral fact, but in the manner of its disclosure, that is, the misconduct of counsel.' "

The trial court was of the view, as expressed in its memorandum opinion, that the matter of insurance had not been deliberately brought into this case, and that the questions asked were proper. We are of the same view.

In this connection, it is further contended that counsel for Mr. and Mrs. Popoff made improper argument to the jury, both in his opening and in his closing arguments. The portion of the arguments complained of is attempted to be shown by affidavit, and not by certificate of the trial court. This court has a number of times held that anything which is done or said in the presence of the court cannot be shown by affidavit, but must be shown by certificate of the trial court. *Loy v. Northern Pac. R. Co.,* 77 Wash. 25, 137 Pac. 446; *State v. Johnston,* 83 Wash. 1, 144 Pac. 944; *State v. Brady,* 138 Wash. 421, 244 Pac. 675; *State v. Knapp,* 194 Wash. 286, 77 P. (2d) 985; *Hanley v. Most,* 9 Wn. (2d) 474, 115 P. (2d) 951.

The judgment will be affirmed.

MILLARD, BLAKE, JEFFERS, and DRIVER, JJ., concur.

STEINERT, J. (dissenting)—I am in accord with all that is said in the majority opinion except that portion dealing with the examination of certain jurors on their *voir dire.* As to the first two jurors referred to in the majority opinion, there was no occasion at all for respondents' counsel to interrogate them on the subject of insurance. As to the third juror, who voluntarily stated that his occupation was that of "Farmer and insurance salesman," I concede that it was proper to elicit from him, as counsel did, the name of the particular insurance company which he represented. But counsel went further and asked the juror: "Do you know whether Mr. Robertson [appellant's counsel] is

attorney for your company?" This, in my opinion, was improper. In any event, to permit counsel deliberately to open up the subject of insurance by asking juror after juror whether he or she has any connection with a casualty insurance company, when that line of inquiry is not prompted by previous answers of the juror respecting his occupation, is in effect to suggest to the jury as a whole that an insurance company stands back of one of the litigant parties, and certainly any jury will quickly divine which one of the parties is thus protected. With that fact impressed upon the minds of those to whom the case is to be submitted for decision, the rest is often easy sailing. No matter how conscientious a jury may be, it will the more readily find for the plaintiff, regardless of the merits of the case, if it knows that an insurance company will in any event reimburse the defendant, than it would if it were deciding the issue simply between the litigant parties and determining which of them must lose by its verdict. Juries should be allowed to determine controversies upon the basis of the facts and the law, and not upon considerations of sympathy or prejudice induced by the thought that an insurance company is involved.

In the argument before the trial court, respondents' counsel took the position that he had a perfect right to ask such questions of every juror, without exception, stating that he had often done so in other cases and that appellant's counsel had habitually done the same thing in cases where he represented the plaintiff. Despite what either counsel may have done in other cases, I am unwilling to make that a basis for permitting it in every similar case, whether tried in Spokane county or elsewhere in the state. Counsel's own statement establishes that the inquiry was made

deliberately, and for that reason I think a mistrial should have been declared. Had that been done in this case when the improper occurrence took place, another jury could have been immediately called and the trial could have proceeded without any very great delay. Were that procedure followed regularly, I think that the practice of injecting the insurance question in such cases would soon terminate. For the reasons herein stated, I think the judgment should be reversed and a new trial granted.

ROBINSON, C. J., BEALS, and SIMPSON, JJ., concur with STEINERT, J.

[1]Reported in 126 P. (2d) 582.