FILED
COURT OF APPEALS
DIVISION II

2014 SEP -3 AM 3: 23

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44650-2-II |
| Respondent, | |
| v. | |
| TRAVIS B. COUNTS, | UNPUBLISHED OPINION |
| Appellant. | |

HUNT, J. — Travis B. Counts appeals his jury trial conviction for second degree assault (domestic violence) with a firearm enhancement. He also challenges the legality of his appeal bond. He argues that (1) the trial court denied his right to a public trial by conducting two sidebar colloquies with counsel, (2) his trial counsel provided ineffective assistance by failing to preserve the content of the sidebars for the record, and (3) the trial court erred by requiring two sureties as his appeal bond instead of one. We affirm.

## FACTS

### I. DOMESTIC DISPUTE

The parties do not dispute the facts. Carrie Dodge and Travis Counts, former high school acquaintances, reconnected in July 2010 and began dating later that year. Their relationship was unstable: Dodge moved in and out of Counts' home three times between October 2010 and July 2012.

On July 31, 2012, Dodge and Counts got into a heated argument that escalated into screaming, foul language, and name calling. Counts picked up a fully operational Ruger mini .14 rifle and pointed it at Dodge; according to Dodge, the rifle touched her head. Counts

removed the bullet from the chamber and walked away. Dodge called the police who arrived at Counts' home and, after speaking with both parties, arrested Counts.

## II. PROCEDURE

The State charged Counts with second degree assault while armed with a firearm. The State also specially alleged that Counts had committed the assault against a family or household member (domestic violence). The case proceeded to a jury trial.

When the trial court read the charges during jury selection, Counts requested a sidebar[1] to discuss the issue of whether the court's comments about domestic violence were grounds for a mistrial. Counts did not ask for the sidebar to be on the record. Nor did Counts object to the trial court's refusal to grant his request for a mistrial during the sidebar.

During a later pretrial hearing, outside the jury's presence, Counts noted the content of the earlier sidebar for the record as follows:

> [DEFENSE COUNSEL]: When the court was reading out the charge, it indicated assault in the second degree, domestic violence, while armed with a firearm, and that, of course, clicked in my mind, and I was going to say something after the fact with regard to that, but then [the prosecutor], when he started addressing the panel, started talking about domestic violence, and that's when I asked if we could approach the court, and we had a little sidebar.
> And at that point I believe at that time I asked for – I know at that time I asked for a mistrial based on those comments, and I would on the record request a mistrial based on the comments from the court and from [the prosecutor] during jury selection with regard to domestic violence.

Verbatim Report of Proceedings (VRP) at 17. The trial court denied Counts' renewed motion for a mistrial, and the trial proceeded.

---

[1] The record on appeal does not contain a transcript of defense counsel's request for a sidebar or the verbatim content of the sidebar colloquy.

During Dodge's rebuttal testimony, a dispute arose about the propriety of the State's line of questioning, and the trial court requested a sidebar:

[PROSECUTOR:] One time, if I understand your testimony correctly, the sheriff or law enforcement was called to have you removed from his residence; is that correct?
[DODGE:] Yes.
[PROSECUTOR:] Were there any other times other than the one time?
[DODGE:] NO.
[PROSECUTOR:] You're sure about that?
[DODGE:] Promise.
[PROSECUTOR:] Now, do you know whether or not Mr. Counts smoked marijuana while you and he were dating?
[DODGE:] Yes.
[PROSECUTOR:] And how do you know that?
        [DEFENSE COUNSEL:] I'm going to object.
[DODGE:] Because --
        [DEFENSE COUNSEL:] This is not rebuttal.
        [PROSECUTOR:] Absolutely it is.
        THE COURT: Well, I'm going to allow some limited inquiry here, so let's see what the answer is.
[DODGE:] Yes.
[PROSECUTOR:] Okay.
[DODGE:] And how do I know? Because we would stand there outside and do it together.
[PROSECUTOR:] Outside where?
[DODGE:] Outside the house.
[PROSECUTOR:] And how often would that happen?
        THE COURT: All right. Now may I see counsel at the bench, please.
                                (SIDE-BAR CONFERENCE.)
[PROSECUTOR:] Did Mr. Counts ever drive you to your jobs?
[DODGE:] Once in a while.
[PROSECUTOR:] Like how often?
[DODGE:] Not very often.

VRP at 303-04. Again, Counts neither objected to this sidebar colloquy nor asked the trial court to put it on the record.

The jury found Counts guilty as charged. The jury also returned special verdicts finding that Counts had been armed with a firearm at the time of the assault and that the crime

involved domestic violence. The trial court sentenced Counts to a standard range sentence of 42 months in prison. Counts requested an appeal bond, which the trial court granted. Interpreting chapter 10.73 RCW, the trial court required two sureties for the appeal bond, each in the amount of $150,000. Counts did not object. He now appeals his conviction and the legality of his appeal bond.

## ANALYSIS

### I. PUBLIC TRIAL

Counts argues that the trial court violated his right to a public trial by conducting two sidebar conferences off the record. The State responds that because Counts failed to object and to preserve this issue at trial, he may not raise it for the first time on appeal. We agree with the State.

### A. Standard of Review

We generally will not review a claim of error raised for the first time on appeal unless it is a "manifest" error affecting a constitutional right. RAP 2.5(a)(3); *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009). An error is "manifest" if the defendant can plausibly show "that the asserted error had practical and identifiable consequences" at trial. *State v. Lynn*, 67 Wn. App. 339, 345, 835 P.2d 251 (1992).

### B. No Error Affecting Constitutional Right

We acknowledge that both federal and state constitutions guarantee a criminal defendant the right to a public trial. *State v. Lormor*, 172 Wn.2d 85, 90-91, 257 P.3d 624 (2011); U.S. CONST. amends. VI, XIV; WASH. CONST. art. I, §22. But here, Counts does not show that the

trial court denied him a public trial.[2] On the contrary, the record shows that the sidebars were conducted in open court, with no one excluded from the courtroom. Second, it was Counts who requested the first sidebar to address matters he felt were prejudicial for the jury to hear; and he did not even ask that this first sidebar be put on the record. The second sidebar, though requested by the trial court, was in response to Counts' objections to the State's rebuttal on direct examination of Dodge. Counts did not object that the sidebar denied his right to a public trial; nor did he seek to put the colloquy on the record.

But even assuming, without deciding, that holding a sidebar off the record in open court could be construed as implicating the right to a public trial, we apply the "experience and logic" test to determine whether a trial court must hold a particular portion of a proceeding in public. *State v. Love*, 176 Wn. App. 911, 916, 309 P.3d 1209 (2013) (quoting *State v. Sublett*, 176 Wn.2d 58, 141, 292 P.3d 715 (2012)); *State v. Dunn*, 180 Wn. App. 570, 574-75, 321 P.3d 1283 (2014) (adopting the *Love* analysis). Under this test, we review whether a sidebar not open to the public was necessary by considering "both history (experience) and the purposes of the open trial provision (logic)." *Love*, 176 Wn. App. at 916 (citing *Sublett*, 176 Wn.2d at 73). "The experience prong asks whether the practice in question historically has been open to the public,

---

[2] We note that a defendant does not waive his right to a public trial if he fails to object. *State v. Bone-Club*, 128 Wn.2d 254, 261, 906 P.2d 325 (1995). Here, however, we focus on Counts' failure to show a courtroom closure that would have triggered a *Bone-Club* analysis, whether preserved below or not.

while the logic prong asks whether public access is significant to the functioning of the right."[3] *Love*, 176 Wn. App. at 916 (citing *Sublett*, 176 Wn.2d at 73).

Sidebars have historically *not* been open to the public. They serve the important purpose of ensuring a fair trial by insulating potentially prejudicial discussions from the jury's ears. *See, e.g. Sublett*, 176 Wn.2d at 67-68 (public trial right "does not extend to hearings on purely ministerial or legal issues that do not require the resolution of disputed facts"); *State v. Swenson*, 62 Wn.2d 259, 272, 382 P.2d 614 (1963), *overruled on other grounds by State v. Land*, 121 Wn.2d 494, 851 P.2d 678 (1993) (defendant's public trial right not implicated when holding a sidebar conference to address concerns about a witness's comfort while testifying); *Popoff v. Mott*, 14 Wn.2d 1, 9, 126 P.2d 597 (1942) (defendant's public trial right not implicated when holding a sidebar during voir dire on whether to excuse a juror for cause). *See also Love*, 176 Wn. App. at 920 (defendant's public trial right not violated by hearing for cause challenges at sidebar during jury selection); *State v. Castro*, 159 Wn. App. 340, 341, 246 P.3d 228 (2011) (defendant's public trial right not implicated when, after holding a sidebar to decide motions in limine, the trial court placed its decisions on the record in open court and counsel had an opportunity to object); *State v. Rivera*, 108 Wn. App. 645, 653, 32 P.3d 292 (2001) (defendant's public trial right not violated by closing the courtroom for a brief hearing on a juror's complaint about another juror's hygiene). Here, Counts later put the contents of the first sidebar on the record, out of the jury's presence.

---

[3] If the answer to both questions is affirmative, then the trial court must apply the *Bone-Club* test before closing the courtroom. *Love*, 176 Wn. App. at 916 (citing *Sublett*, 176 Wn.2d at 73); *Bone-Club*, 128 Wn.2d at 258-59.

Although no one put the contents of the second sidebar on the record, its contents were obvious from its having been prompted by Counts' objection that the State's cross-examination was prejudicial: The trial court held the sidebar to discuss limiting the scope of a defense witness's testimony, which did not require resolution of disputed facts. *See State v. Ortiz*, 119 Wn.2d 294, 308, 831 P.2d 1060 (1992) (it is within trial court's discretion to limit lay opinion testimony). Based on the experience and logic test, we hold that the two sidebars during Counts' trial did not constitute courtroom closures and did not deny him his constitutional right to a public trial.[4]

## II. EFFECTIVE ASSISTANCE OF COUNSEL

Counts also argues that he was denied effective assistance of counsel because his trial counsel failed to put the sidebar conversations on the record. The State counters that defense counsel's performance was not deficient in dealing with the first sidebar and the potentially

---

[4] The record does not show whether Counts himself participated in the sidebars or was prevented from providing input or advice to his counsel, as he contends. Furthermore, even assuming that he did not participate directly in the sidebars, he fails to support with specifics how his being seated only a few feet from his counsel during the sidebars prevented his consulting with counsel or prejudiced him in any way.

On the contrary, our independent review of the record shows that these sidebars served to prevent prejudice to Counts. During the first sidebar, which Counts requested, he moved for a mistrial based on the prosecutor's allegedly prejudicial comments about domestic violence. Discussing these potentially prejudicial remarks outside the jury's hearing minimized any prejudice. And although the record does not reveal the content of the second sidebar, it, too, prevented potential prejudice to Counts by insulating the jury from the discussion about whether the trial court should allow the State to continue questioning Dodge about her and Counts' marijuana use. The record clearly shows that immediately following this sidebar, the prosecutor abandoned the marijuana inquiry and switched to a different topic. Counts fails to show any "practical and identifiable consequences" or prejudice from either sidebar. *See Lynn*, 67 Wn. App. at 345.

deficient performance in dealing with the second sidebar did not prejudice Counts. Again, we agree with the State.

To establish ineffective assistance of counsel, Counts must show both that (1) his counsel's performance was deficient, and (2) this deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). The defendant's failure to show either element ends our inquiry. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996). Representation is deficient if, after considering all the circumstances, it falls "below an objective standard of reasonableness." *Grier*, 171 Wn.2d at 33 (quoting *Strickland*, 466 U.S. at 688). Prejudice exists if there is a reasonable probability that, except for counsel's errors, the result of the proceeding would have been different. *Grier*, 171 Wn.2d at 34 (citing *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)). We review claims of ineffective assistance of counsel de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009) (citing *In re Pers. Restraint of Fleming*, 142 Wn.2d 853, 865, 16 P.3d 610 (2001)).

Counts relies on *State v. Koloske* in support of his argument that his counsel's failure to record the sidebars necessarily prejudiced him. 100 Wn.2d 889, 896, 676 P.2d 456 (1984), *overruled by State v. Brown*, 113 Wn.2d 520, 782 P.2d 1013 (1989). The *Koloske* court noted, "We realize that the purpose of an unrecorded sidebar conference is to dispose quickly of uncomplicated issues without repeatedly removing the jury from the courtroom. But . . . [f]ailure to record the resulting ruling *may* preclude review." 100 Wn.2d at 896 (emphasis added). *Koloske* does not support Counts' argument here. *Koloske* did not hold that failure to put an unrecorded sidebar on the record *always* precludes appellate review; rather it merely noted that

such failure has the *potential* to curtail appellate review. 100 Wn.2d at 896. Thus, the burden still remains on Counts to show how his counsel's failure to put the second sidebar on the record meets both prongs of the ineffective assistance of counsel test. Counts fails to carry this burden.

We address only the second ineffective assistance of counsel test prong, prejudice. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 847, 280 P.3d 1102 (2012) (concluding that where petitioner fails one prong of the *Strickland* test the court need not consider the other). Counts fails to show how recording the content of the sidebars would have produced a different jury verdict.[5] *See Grier*, 171 Wn.2d at 43-44 (holding that defendant could not establish that the jury would not have convicted him but for counsel's trial decisions). That the trial court twice denied defense counsel's mistrial motions tends to show that the outcome of the trial would not have been different had counsel put the content of both sidebars on the record. Because Counts fails to show prejudice, we do not reach the question of whether counsel's conduct fell "below an objective standard of reasonableness." *Grier*, 171 Wn.2d at 33 (quoting *Strickland*, 466 U.S. at 688). Counts' ineffective assistance of counsel claim fails.

### III. SURETIES

Counts also argues that the trial court erred by ruling that RCW 10.73.040 required it to impose two appeal bonds from two separate sureties in order for Counts to be released from

---

[5] We are not persuaded by Counts' related argument that "[b]ecause there was no record of what was omitted from the record, [he] could not have agreed to the omission." Br. of Appellant at 22. Counts had adequate opportunity to ask the trial court to disclose the content of the conversations before, during, or after they occurred, and to put them on the record. Moreover, defense counsel disclosed the content of the first sidebar and put it on the record, thereby eliminating potential prejudice from the first sidebar's not being on the record verbatim.

custody pending his appeal. Counts asserts that to the extent that RCW 10.73.040 conflicts with CrR 3.2, the court rule controls the procedure for setting an appeal bond, and it does not require two separate sureties.[6] The State agrees with Counts' analysis. But because we affirm, the issue of Counts' appeal bond is moot,[7] and we need not reach the threshold question of whether RAP 2.5(a) permits Counts to raise this issue for the first time on appeal.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Hunt, J.

We concur:

Bjorgen, A.C.J.

Lee, J.

---

[6] CrR 3.2(b) provides, in part: "If the court determines that the accused is not likely to appear if released on personal recognizance, the court shall[:] (4) Require the execution of a bond.".

[7] *State v. Harris*, 148 Wn. App. 22, 26, 197 P.3d 1206 (2008) (emphasizing that an issue on appeal is moot if reviewing court can no longer provide the party effective relief).