# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | |
|---|---|
| RAMANPREET KUMAR, an individual,<br><br><br>Respondent,<br><br>v.<br><br>KATHARINE R. APPLETON, Executor of the Estate of William George Appleton, Jr., and "JANE DOE" APPLETON, both individually and on behalf of the marital community composed thereof,<br><br>Appellants. | No. 84899-2-1<br><br>ORDER DENYING MOTION FOR RECONSIDERATION AND WITHDRAWING AND SUBSTITUTING OPINION |

The appellant, Estate of Appleton, has filed a motion for reconsideration of the opinion filed on December 26, 2023. The court has determined that the motion should be denied, but the opinion should be withdrawn, and a substitute opinion filed; now, therefore, it is hereby

ORDERED that the motion for reconsideration is denied; and it is further

ORDERED that the opinion filed on December 26, 2023 is withdrawn; and it is further

ORDERED that a substitute unpublished opinion shall be filed.

_Feldman, J._

_Díaz, J._                    _Mann, J._

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| RAMANPREET KUMAR, an individual,<br><br>              Respondent,<br><br>        v.<br><br>KATHARINE R. APPLETON, Executor of the Estate of William George Appleton, Jr., and "JANE DOE" APPLETON, both individually and on behalf of the marital community composed thereof,<br><br>              Appellants. | No. 84899-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

FELDMAN, J. — Katharine Appleton, Executor of the Estate of William Appleton (Appleton), appeals from a jury verdict and judgment awarding Ramanpreet Kumar $6.5 million in noneconomic damages caused by a motor vehicle collision as to which Appleton admitted liability.[1] Finding no reversible error, we affirm.

I

On December 10, 2015, Appleton's vehicle collided with Kumar's vehicle after Appleton turned left through an intersection without yielding the right-of-way to Kumar. Three days after the collision, Kumar went to the emergency room

---

[1] We use "Appleton" in this opinion to refer to both William Appleton and his estate, which replaced him as the defendant after his death unrelated to the motor vehicle collision.

complaining of pain in her neck and right hip from the motor vehicle collision. The emergency room physician diagnosed Kumar with an acute cervical strain and right hip strain.

Almost a year later, following extensive chiropractic and massage therapy treatments Kumar's treating physician, Dr. Alma Garcia, diagnosed Kumar with "lumbosacral injury with a probable underlying joint injury with probable myofascial component, and right sacroiliac and piriformis involvement."[2] Kumar underwent physical therapy and received cortisone injections to her right sacroiliac joint (SI joint) every six months.

Kumar returned to Dr. Garcia in April 2019 for another cortisone injection. Kumar informed Dr. Garcia that her hip pain from the 2015 collision had not improved. Given the lack of improvement, Dr. Garcia ordered an MRI, which revealed Kumar has osteitis condendans ilii (OCI). OCI is a thickening of the iliac bone. It is generally asymptomatic, as it was here prior to the 2015 collision.

Kumar sued Appleton for damages caused by the collision. Following discovery, including a CR 35 examination of Kumar by Dr. James Harris,[3] Kumar filed a motion for partial summary judgment seeking dismissal of each and all of the causation defenses set forth in Appleton's answer. The trial court granted the motion. Before trial, Kumar filed motions in limine to exclude the testimony of two

---

[2] "Lumbar" refers to the lower back. The "sacrum" is a fusion of vertebrae comprising the base of the spine. The "ilium" is a bone forming part of the pelvis. The "sacroiliac joint" is where the ilium and sacrum come together. The "piriformis" is a muscle that connects to the outer hip across the sacrum. "Myofascial pain" refers to muscle spasms and tension related to muscle strain.

[3] CR 35 allows a trial court, upon a motion for good cause, to order a party to submit to a physical examination by a physician when the physical condition of that party is in controversy. CR 35(a)(1).

of Appleton's expert witnesses, Dr. Harris and Dr. Dean Shibata, because their opinions that Kumar's OCI is causing her ongoing pain contradicted the trial court's summary judgment ruling striking Appleton's causation defenses. The trial court granted these motions.

At trial, Dr. Garcia testified that the 2015 motor vehicle collision caused Kumar to suffer a permanent "lumbosacral injury with sacroiliac dysfunction." Regarding treatment, Dr. Garcia stated that injections into the SI joint usually alleviate this type of pain for five to ten years, after which surgery may be required. Kumar testified that her hip is in constant pain, and her friends and a coworker testified that her injury has limited her ability to do physical activities and caused her to become emotionally "soulless."

The jury awarded Kumar $6.5 million in noneconomic damages, consisting of $5 million for past and $1.5 million for future noneconomic damages. Appleton filed a motion for a new trial, which the trial court denied with the exception of lowering the interest rate on the judgment from 11 percent to 9 percent. Appleton timely appeals.

II

A.     *Award of partial summary judgment to Kumar*

In her summary judgment motion, Kumar requested that the trial court strike all of the causation defenses that Appleton raised in his answer, including the following:

> 3.   Any and all damages and/or injuries sustained by [Kumar], if any, may have *preexisted* the events alleged against [Appleton] by [Kumar] in the Amended Complaint, or otherwise have been caused by *subsequent* events and/or instrumentalities having no connection to [Appleton].

. . . .

7.  Any and all damages and/or injuries sustained by [Kumar], if any, may not have been foreseeable and/or may have been caused by or contributed by *intervening causes* that [Appleton] had no control over and for which they are not legally responsible

(Emphasis added.) Appleton claims the trial court erred in granting the motion because these causation issues should have been decided by the jury. We disagree.

We review "summary judgment orders de novo, engaging in the same inquiry as the trial court." *Desranleau v. Hyland's, Inc.*, 10 Wn. App. 2d 837, 842, 450 P.3d 1203 (2019). We consider only "evidence and issues called to the attention of the trial court." RAP 9.12. "Summary judgment is warranted only when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). The facts and all reasonable inferences are viewed in the light most favorable to the nonmoving party." *Desranleau*, 10 Wn. App. 2d at 842. We also review de novo a trial court's evidentiary rulings made in conjunction with a summary judgment motion. *Watness v. City of Seattle*, 16 Wn. App. 2d 297, 305, 481 P.3d 570 (2021).

Critical here, summary judgment motions are governed by "'a burden-shifting scheme.'" *Welch v. Brand Insulations, Inc.*, 27 Wn. App. 2d 110, 114, 531 P.3d 265 (2023) (quoting *Bucci v. Nw. Tr. Servs., Inc.*, 197 Wn. App. 318, 326, 387 P.3d 1139 (2016)). "The moving party bears the initial burden 'to prove by uncontroverted facts that there is no genuine issue of material fact.'" *Id.* (quoting *Jacobsen v. State*, 89 Wn.2d 104, 108, 569 P.2d 1152 (1977)). If the moving party satisfies its burden, then the burden shifts to the nonmoving party to "'set

forth specific facts evidencing a genuine issue of material fact for trial.'" *Id*. (quoting *Schaaf v. Highfield,* 127 Wn.2d 17, 21, 896 P.2d 665 (1995)).

Kumar plainly satisfied her initial burden on summary judgment. In her summary judgment motion, Kumar argued that the 2015 collision was the sole cause of the pain for which she would be seeking damages at trial. Kumar relied on declarations from Dr. Garcia stating that Kumar had no history of back or hip pain or disability prior to the 2015 collision, that she had been continually experiencing pain in the same region of her right hip and lower back since the collision, that Dr. Garcia diagnosed her with a "lumbosacral injury with a probable underlying joint injury with probable myofascial component, and right sacroiliac and piriformis involvement," and that this diagnosis is "more likely than not, with a reasonable degree of medical certainty, related to the December 10, 2015, motor vehicle collision."

Kumar also submitted evidence showing that her OCI condition preexisted and was asymptomatic prior to the 2015 collision. Kumar then cited Washington precedent holding that such a preexisting condition cannot be a proximate cause of damages resulting from a negligent act where, as here, that condition was asymptomatic prior to the accident.[4] Because Kumar satisfied her initial burden of showing that there is no genuine issue of material fact regarding causation for her claimed injuries, the burden of production shifted to Appleton (the nonmoving party) to "'set forth specific facts evidencing a genuine issue of material fact for

---

[4] *Little v. King*, 160 Wn.2d 696, 705, 161 P.3d 345 (2007); *Harris v. Drake*, 152 Wn.2d 480, 494, 99 P.3d 872 (2004); *Hoskins v. Reich*, 142 Wn. App. 557, 570, 174 P.3d 1250 (2008).

trial.'" *Welch*, 27 Wn. App. 2d at 115 (quoting *Schaaf*, 127 Wn.2d at 21).

Where, as here, the moving party satisfies their initial burden and the burden of production shifts to the nonmoving party, that party "cannot rely on 'speculation, argumentative assertions that unresolved factual issues remain, or in having its affidavits considered at face value.'" *M.E. v. City of Tacoma*, 15 Wn. App. 2d 21, 31-32, 471 P.3d 950 (2020) (quoting *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986)). Expert testimony is generally required on the issue of medical causation. *Street v. Weyerhaeuser Co.*, 189 Wn.2d 187, 198, 399 P.3d 1156 (2017). That testimony must be based on reasonable medical certainty or probability and cannot be based on speculation, conjecture, or mere possibility. *Desranleau*, 26 Wn. App. 2d at 438. Additionally, the "expert must support [their] opinion with specific facts, and a court will disregard expert opinions where the factual basis for the opinion is found to be inadequate." *Woodward v. Lopez*, 174 Wn. App. 460, 468, 300 P.3d 417 (2013) (quoting *Rothweiler v. Clark County*, 108 Wn. App. 91, 100, 29 P.3d 758 (2001)). An expert's opinion that is based on a conclusion or an assumption instead of facts "is not evidence which will take a case to the jury." *Theonnes v. Hazen*, 37 Wn. App. 644, 648, 681 P.2d 1284 (1984).

Despite this burden shifting framework, Appleton's brief in opposition to Kumar's summary judgment motion is conclusory and unsupported by requisite evidence. Appleton devoted a single paragraph to the issue of alternative causes of Kumar's pain. Regarding injuries that preexisted the 2015 motor vehicle accident, Appleton conceded that "there does not appear to be any preexisting symptomatic condition just prior to the [2015] accident." By conceding this critical

factual issue and ignoring the cases that Kumar cited on this point, Appleton effectively agreed that there are no fact issues regarding causation from preexisting events or injuries (such as OCI).

Turning to subsequent events, including intervening and superseding causes, Appleton argued that Kumar "suffered from additional injuries and underwent further treatment for a motor vehicle accident and work-related injury that occurred in 2018 and impacted her ability to continue in her job position at the time." Appleton stated these "subsequent injuries . . . affect the outcome of issues in this case and should be presented to a trier of fact." But despite alluding to these subsequent injuries, Appleton did not explain how they caused any of the damages that Kumar was seeking at trial. Nor did Appleton present expert testimony on this critical point, as required to establish medical causation. *See Street*, 189 Wn.2d at 198.

Finally, Appleton relied on Dr. Harris' opinion that the 2015 collision did not cause Kumar to suffer an "anatomic structural injury"—which Dr. Harris defined as "fracture, dislocation, ligament or tendon disruption or laceration, significant injury to the integument, or a neurovascular injury"—and that Kumar "instead suffered nonspecific myofascial pain." But the lack of an "anatomic structural injury" to Kumar following the 2015 collision is irrelevant because that term, according to Dr. Harris' own definition, does not encompass the injuries diagnosed by Dr. Garcia, namely joint pain and sacroiliac dysfunction.

Additionally, in reaching his conclusion that Kumar only suffered "myofascial pain" from the collision, Dr. Harris relied solely on photographs of the accident scene and studies of how people are typically injured in the type of

motor vehicle collision that would have produced the damage to the vehicles depicted in the photographs. Washington courts have found that an expert's opinion based on information gathered in human volunteer crash testing is speculative when, as here, it does not consider how the accident affected the specific subject at issue. *See Stedman v. Cooper*, 172 Wn. App. 9, 19-20, 292 P.3d 764 (2012) (rejecting expert's conclusion that plaintiff "could not have been injured in the accident because the force of the impact was too small"). For this reason too, Appleton failed to carry his burden to set forth specific facts and admissible evidence supporting his causation defenses. On this record, the trial court correctly granted Kumar's motion for summary judgment dismissing these defenses and determined medical causation as a matter of law.[5]

Notwithstanding the above analysis, Appleton argues that he established genuine issues of material fact regarding causation because "Dr. Harris disagreed with Dr. Garcia about the nature and extent of the accident-related injuries." As explained above, Appleton could not avoid summary judgment by merely asserting that his experts disagree with Kumar's experts. *See M.E.*, 15 Wn. App. 2d at 31-32. Instead, Appleton was required to provide admissible expert testimony that was not based on speculation, conjecture, assumptions, or mere possibility, which he failed to do. *See Desranleau*, 26 Wn. App. 2d at 438.

---

[5] The trial court's summary judgment order also determined that there were no genuine issues of material fact as to whether Kumar's past medical expenses between the date of the 2015 collision and July 2019 were reasonable in cost, medically necessary, and causally related to the collision. Kumar later dismissed all of her economic damages claims, and these past medical expenses were not included in the jury's verdict or trial court's judgments on the verdict. Therefore, we do not separately address whether the trial court erred in granting summary judgment as to the recoverability of these past medical expenses other than as discussed in the text above with regard to causation generally.

Notably, Dr. Harris agreed with Dr. Garcia that Kumar began experiencing pain in her right hip area after the 2015 motor vehicle collision and that she was still experiencing this same pain years after the collision. In light of the materials Appleton submitted on summary judgment, his conclusory assertions about the "nature and extent" of Kumar's pain were insufficient to avoid summary judgment.

Next, Appleton argues that Dr. Harris' reliance on OCI as the only source of Kumar's ongoing pain did not render all his opinions inadmissible because he was not required to explain why Kumar is still experiencing pain. This argument ignores the principle that experts must adequately explain the foundation for their opinions. *See Woodward*, 174 Wn. App. at 468. Because Appleton conceded on summary judgment that evidence of OCI is inadmissible to dispute causation, Dr. Harris would not have been able to explain to a jury why he ultimately disagreed with Kumar's experts that OCI is causing the pain for which she was seeking recovery.

To avoid this result, Appleton argues that *Harris v. Drake*, 152 Wn.2d 480, 493-94, 99 P.3d 872 (2004), and *Little v. King*, 160 Wn.2d 696, 704-05, 161 P.3d 345 (2007)—which generally recognize that evidence of asymptomatic preexisting conditions is inadmissible on the issue of causation—are distinguishable because, unlike the experts in those cases, Dr. Harris could somehow offer "admissible evidence on causation." But Appleton does not explain what this evidence is and why it would be admissible. Because Appleton failed to establish fact issues as to his causation defenses, the trial court did not

err in granting partial summary judgment to Kumar.[6]

B.    *Exclusion of Drs. Harris and Shibata as defense expert witnesses*

In her motions in limine to exclude the expert testimony of Drs. Harris and Shibata, Kumar argued that their testimony regarding causation was inadmissible because it contradicted the trial court's summary judgment ruling dismissing Appleton's causation defenses. The trial court granted Kumar's motion and excluded Dr. Harris' and Dr. Shibata's testimony because it would be unhelpful, speculative, and unreliable. Appleton claims that the trial court abused its discretion in so ruling. We disagree.

In ruling on motions in limine, trial courts are afforded wide discretion in determining the admissibility of expert testimony, and these rulings are reviewed for an abuse of discretion. *Johnston-Forbes v. Matsunaga*, 181 Wn.2d 346, 352, 333 P.3d 388 (2014). An expert witness may only offer an opinion that will "assist the trier of fact to understand the evidence or to determine a fact in issue." ER 702. Where, as here, an expert seeks to address a defense that has been stricken as a matter of law, it is axiomatic that such testimony cannot assist the trier of fact in determining a fact in issue as ER 702 requires. *See e.g., Magana v. Hyundai Motor Am.*, 123 Wn. App. 306, 315, 94 P.3d 987 (2004) ("It is error for the jury to consider evidence that the court either has not admitted or has stricken."). That is precisely what occurred here, making it unnecessary to

---

[6] On appeal, Appleton also assigns error to the trial court's denial of his motion for reconsideration. We decline to address this issue on the merits or consider any evidence submitted with Appleton's motion for reconsideration because Appleton's appellate brief offers no supporting argument as to why the trial court erred in denying reconsideration. *See Christian v. Tohmeh*, 191 Wn. App. 709, 727-28, 366 P.3d 16 (2015) ("[T]his court does not review issues not argued, briefed, or supported with citation to authority.") (citing RAP 10.3(a)(6)).

address alternative grounds for granting Kumar's motions.

In her motions in limine regarding Drs. Harris and Shibata, Kumar argued that their opinions related to the causation contradicted the trial court's summary judgment ruling and therefore would be confusing, unhelpful, speculative, and unreliable. Appleton's responsive motion did not address these reasons for excluding Dr. Harris. As to Dr. Shibata, Appleton argued that he should be allowed to address "any other conditions if [Kumar] opens the door to discussion of these issues, including the [OCI] condition." At the hearing on the motions in limine, when the court asked for an example of what Dr. Harris could say at trial without violating the summary judgment order, Appleton responded that Dr. Harris "would not say what he believes it [the pain] is from; he can just argue I disagree with Plaintiff's providers as to what they believe it is."

The trial court did not abuse its discretion when it rejected these arguments. The trial court correctly noted that any testimony from Dr. Harris about OCI would be "irrelevant" based on the summary judgment ruling striking Appleton's causation defenses. The trial court likewise concluded that Dr. Shibata was merely "attempting to put that issue [OCI] back in front of the jury as a preexisting condition that affects the issues left in the case . . . [and] it's just not relevant." Both witnesses would have testified that Kumar's ongoing pain was unrelated to the 2015 collision and was instead caused by OCI. But the trial court's summary judgment ruling striking all of Appleton's alternative causation defenses clearly prohibited his experts from opining that OCI is causing Kumar's ongoing pain. Because it was not possible for Dr. Harris or Dr. Shibata to offer admissible testimony on causation in conformance with the trial court's summary

judgment ruling, the trial court did not abuse its discretion in granting Kumar's motion to preclude them from testifying at trial.

C. *References to insurance during voir dire*

Appleton argues the trial court "erred by interjecting insurance unnecessarily into the trial" during jury selection. We disagree.

Before trial, Kumar submitted proposed voir dire questions that asked potential jurors whether they or anyone they knew had experience working in the insurance industry. The court overruled Appleton's objection to these proposed questions, reasoning that prospective jurors "may have deeply held beliefs that . . . simply make it impossible for them or too difficult for them to follow the law as instructed, and some of those can be related to issues involving insurance." The trial court also denied Appleton's motion in limine to prohibit references to insurance, but clarified that "questions may not imply this or other similar defendants are insured." At the beginning of voir dire, the trial court asked Kumar's proposed insurance-related questions and instructed jurors to raise their hands if they answered in the affirmative. Kumar's counsel later followed up with one of those jurors, who was ultimately stricken for cause without objection from Appleton.

A trial court's ruling on the scope and content of voir dire is reviewed for an abuse of discretion. *State v. Frederiksen*, 40 Wn. App. 749, 752-53, 700 P.2d 369 (1985). While ER 411 states that "[e]vidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully," it does not prohibit mentioning insurance for "another purpose." ER 411; *Terrell v. Hamilton*, 190 Wn. App. 489,

499, 358 P.3d 453 (2015). Critical here, Washington courts have long permitted questioning relating to insurance during voir dire to discover bias among potential jurors to justify a challenge for cause. *See Popoff v. Mott*, 14 Wn.2d 1,8-9, 126 P.2d 597 (1942).

As both ER 411 and relevant case law permit, the references to insurance during voir dire were for "another purpose" within the meaning of the rule, namely to discover bias among potential jurors. Moreover, any prejudice from these references to insurance was cured by final jury instruction 11, which stated, "Whether or not a party has insurance . . . has no bearing on any issue that you must decide." Therefore, we conclude that the trial court did not abuse its discretion by permitting reference to insurance during voir dire.

D.      *Juror questions about Kumar's fears of childbirth*

Appleton argues the trial court erred by permitting Kumar to answer a juror's questions asking, "Does this pain affect your desire to have children? Is it too painful or would it be prohibitive?" Appleton objected to these questions based on ER 611(b) as outside the scope of Kumar's direct testimony. The trial court overruled the objection because Dr. Garcia had previously testified that a potential future treatment option for Kumar included a surgery that would prevent her from giving birth naturally. In response to the juror question, Kumar said the pain from the collision made her scared to get pregnant and that this fear contributed to her divorce from her husband. Because the trial court acted within its discretion under ER 611 in asking the juror question, we disagree with

13

Appleton on this point.[7]

Washington law affords trial courts flexibility in asking juror questions. CR 43(k) requires that a trial court allow jurors to submit to the court written questions directed to witnesses, and ER 611(a) instructs courts to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence." While ER 611(b) states that cross examination "should" be limited to the subject matter of the direct examination, the rule also states that the court "may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination." Our court reviews ER 611 rulings for "manifest abuse of discretion." *State v. Hakimi*, 124 Wn. App. 15, 19, 98 P.3d 809 (2004).

The trial court did not abuse its discretion by asking the juror questions at issue. By the time the jury proposed these questions, it had already heard Dr. Garcia's testimony that Kumar might need surgery that could preclude natural childbirth as well as Kumar's testimony that she and Dr. Garcia "talked about surgery, but that's very scary for me because . . . it might have . . . side effects." The juror's questions followed up on this issue by asking whether Kumar's pain affected her desire and ability to have children. Even assuming the court's reading of the jury questions constituted cross examination and was thereby governed by ER 611, the court was still permitted to inquire into the matter as if on direct examination. *See* ER 611(b). Therefore, the trial court did not abuse its discretion in asking these juror questions.

E.      *Improper statements during Kumar's closing argument*

---

[7] Appleton also argues on appeal that this question violated ER 403, but this argument is waived because he did not object on ER 403 grounds at trial. *See State v. Guloy*, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985).

Appleton claims the trial court erroneously denied his motion for a new trial because Kumar's counsel made three statements during closing argument that deprived him of a fair trial.[8] We review the denial of a motion for new trial based on alleged attorney misconduct for abuse of discretion and only reverse if "such a feeling of prejudice has been engendered or located in the minds of the jury as to prevent a litigant from having a fair trial. *See Gilmore v. Jefferson County. Pub. Transp. Benefit Area*, 190 Wn.2d 483, 502, 415 P.3d 212 (2018) (quoting *Alum. Co. of Am. v. Aetna Cas. & Sur. Co.*, 140 Wn.2d 517, 537, 998 P.2d 856 (2000)). Because none of Kumar's counsel's statements was both improper and prejudicial, we reject Appleton's argument.

First, Appleton argues that Kumar's counsel improperly "referred to his own personal situation of pain" when he said "I've been in pain." Appleton fails to provide legal authority or argument explaining why this remark was improper or prejudicial. *See State v. Loos*, 14 Wn. App. 2d 748, 758, 473 P.3d 1229 (2020) ("When a party provides no citation to support an argument, this court will assume that counsel, after diligent search, has found none."). Even assuming the

---

[8] Appleton assigns error to the trial court's denial of his motion for a new trial and entry of judgments on the jury's verdict. But Appleton's issue statement on these assigned errors asserts that the trial court "deprived [Appleton] of a fair trial by the multiple errors at the trial," without specifying what these trial errors were. Appleton's motion for a new trial raised many of the same arguments discussed in the text above. Appleton's motion also raised several other issues that he has either declined to raise on appeal or failed to support in his appellate briefs with substantive argument and citations to relevant legal authority. These arguments include (a) the trial court's exclusion of two additional defense expert witnesses, (b) unspecified "other questions objected to during [Kumar's] jury selection" that tainted the jury pool, (c) Dr. Garcia's reference during his trial testimony to an excluded defense expert witness, (d) Kumar's "last minute switch in her case strategy" in which she dismissed her economic damages claim before opening statements, and (e) the inconsistency of the jury's award of substantial past noneconomic damages in light of the evidence and Kumar's theory of the case. Because Appleton fails to properly present or argue these issues, we decline to consider them. *See Christian*, 191 Wn. App. at 728.

remark was improper, the trial court sustained Appleton's objection and instructed the jury to disregard the remark, and the jury is presumed to have followed this instruction. *See Diaz v. State*, 175 Wn.2d 457, 474, 285 P.3d 873 (2012).

Second, Appleton argues that Kumar's counsel improperly "pointed to the lack of evidence in [Appleton's] case" by asking, "Why ask hardly any questions of [Kumar]? Why put on no case[?]" The trial court overruled Appleton's objection to these remarks as improper burden shifting. Again, Appleton fails to provide legal authority or argument explaining why these remarks were improper and prejudicial. *See Loos*, 14 Wn. App. 2d at 758. Regardless, the remark was not improper because attorneys have "wide latitude to make reasonable inferences from the evidence during closing argument." *Hamblin v. Castillo Garcia*, 23 Wn. App. 2d 814, 839-40, 517 P.3d 1080 (2022). Given this wide latitude, Kumar could properly suggest to the jury in closing argument that any further cross examination of Kumar or additional evidence produced by Appleton would have been unfavorable. *See Krieger v. McLaughlin*, 50 Wn.2d 461, 464, 313 P.2d 361 (1957).

Third, Appleton argues that Kumar's counsel made comments during closing argument that violated the general principle prohibiting counsel from appealing to the jurors to "place themselves in the position of a litigant and to decide the case based upon what they would then want under the circumstances." *Adkins v. Alum. Co. of Am.*, 110 Wn.2d 128, 140, 750 P.2d 1257 (1988). Because Appleton did not timely object to the purportedly improper statements at issue, he has waived this argument on appeal. *A.C. v. Bellingham*

16

*Sch. Dist.*, 125 Wn. App. 511, 524, 105 P.3d 400 (2004). Therefore, we conclude that the trial court did not abuse its discretion in denying Appleton's motion for new trial.

III

The trial court correctly granted Kumar's motion for partial summary judgment and Kumar's motions in limine to exclude Drs. Harris and Shibata. None of Appleton's other alleged errors warrant reversal. Therefore, we affirm the trial court in all respects.

Feldman, J.

WE CONCUR:

Díaz, J.

Mann, J.